```
1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA
2

3    ------------------------------------------------------------
                                    )
     Polaris Industries, Inc.,      )  File No. 15CV4129
4                                   )       (JRT/LIB)
             Plaintiff,             )
5                                   )
     vs.                            )  Minneapolis, Minnesota
6                                   )  March 23, 2016
     Arctic Cat, Inc.,              )  2:15 P.M.
7                                   )
             Defendant.             )
8    ------------------------------------------------------------

9
          BEFORE THE HONORABLE CHIEF JUDGE JOHN R. TUNHEIM
10                  UNITED STATES DISTRICT COURT
                    (DEFENDANT'S MOTION TO DISMISS)
11
     APPEARANCES
12     For the Plaintiff:          Carlson Caspers Vandenburgh
                                   Lindquist & Schuman PA
13                                 WILLIAM BULLARD, ESQ.
                                   DENNIS BREMER, ESQ.
14                                 225 South Sixth Street
                                   Suite 4200
15                                 Minneapolis, MN 55402

16     For the Defendant:          Fish & Richardson
                                   JOSEPH HERRIGES, ESQ.
17                                 JOHN C. ADKISSON, ESQ.
                                   60 South Sixth Street
18                                 Suite 3300
                                   Minneapolis, MN 55402
19

20     Court Reporter:            KRISTINE MOUSSEAU, CRR-RPR
                                   1005 U.S. Courthouse
21                                 300 South Fourth Street
                                   Minneapolis, MN 55415
22

23

24
          Proceedings recorded by mechanical stenography;
25   transcript produced by computer.
```

```
 1                                              2:15 P.M.

 2

 3                        (In open court.)

 4              THE COURT:  You may be seated.  Good afternoon.

 5    This is Civil Case Number 15-4129, Polaris Industries,

 6    Inc., versus Arctic Cat, Inc.

 7              Counsel note appearances.  First for the

 8    plaintiff?

 9              MR. BULLARD:  Good afternoon, Your Honor.

10    William Bullard and Dennis Bremer from the Carlson Caspers

11    Law Firm representing Polaris Industries.

12              THE COURT:  Good afternoon to both of you.

13              MR. HERRIGES:  Good afternoon, Your Honor.

14    Joseph Herriges and John Adkisson representing Arctic Cat.

15              THE COURT:  Good afternoon to both of you.

16              All right.  The Court has reviewed the

17    defendant's briefs.  We have a motion to dismiss the case.

18              All right.  Are you going to be arguing,

19    Mr. Herriges?

20              MR. HERRIGES:  Yes, Your Honor.

21              THE COURT:  Go right ahead.

22              MR. HERRIGES:  If I may approach, Your Honor,

23    with the presentation?

24              THE COURT:  Okay.

25              MR. HERRIGES:  Good afternoon, Your Honor.  We're
```

1    here because it's Arctic Cat's contention that asserting

2    the '449 patent does not assert a claim under the federal

3    rules.  That is not a dispute under today's motion.  The

4    parties do not dispute that the complaint does not satisfy

5    the new pleadings standards.

6            The question is whether it is just and practical

7    to apply those rules in this case.

8            THE COURT:  Are you arguing also that it fails to

9    comply under the older pleading standard or not?

10           MR. HERRIGES:  We are not, Your Honor.  We would

11   not contest that it fails under that standard.  I do want

12   to be very clear right out of the gate here because there

13   has been a little mud tossed in the briefing about our

14   motives.  We're bringing this motion, and this is the

15   fourth of five lawsuits between the parties, as Your Honor

16   is aware.

17           There were three brief ones.  We have answered

18   every single one of those complaints in a timely fashion.

19   We don't necessarily agree with the merits of those

20   complaints.  In fact, on the first asserted patent, the

21   Patent Trials and Appeals Board has held the patent is

22   completely invalid, but we have nevertheless answered those

23   complaints in a timely fashion.

24           But we do think that this complaint is

25   procedurally different and substantively different, and

1   that's why we brought this motion, and I've created a time

2   line here on my presentation that I think gives a little

3   background and gives a little color as to why we think it's

4   appropriate to apply the amended rules in this situation.

5          As you can see, Your Honor, I have highlighted

6   the four cases that are currently pending before this

7   court.  There is a fifth.  It was filed December of 2015,

8   pending before Judge Montgomery.  The first case was filed

9   back in September 2013, and in September of 2014, there

10  were two additional cases.

11         The parties went on to litigate those cases, the

12  consolidated cases, until or through 2014 and into February

13  of 2015, and at that point, the '449 patent issued, and

14  that's the patent that is now subject to this motion.

15  Polaris at that time did not assert the patent.

16         The parties instead continued on litigating those

17  first three cases until we ultimately filed a joint

18  stipulation to stay the three cases because of certain

19  proceedings that Arctic Cat had before the Patent Trials

20  and Appeals Board.

21         Judge Noel, as you know, initially denied that

22  request, so the parties jointly appealed to Your Honor for

23  what we thought was the purpose of slowing down the

24  litigation for efficiency purposes and for trying to

25  resolve the case and potentially settle it.

1        Your Honor ultimately granted our motion on

2   November 5th, and at that point, we were, we were pencils

3   down.  We took our representation seriously that the

4   purpose of this was to try to resolve the matter, to try to

5   settle it, but ultimately that's not what happened.  We

6   were ultimately sued less than two weeks later on the '449

7   patent.

8        Polaris sued us again without warning, and we

9   were frankly surprised, so we asked for 30 days to evaluate

10  to re-initiate our litigation efforts to get our client

11  back up to speed, and that request was granted by Polaris,

12  and during that time, we began investigating the complaint

13  and looking at the patent, comparing it to our products.

14       We started to have serious concerns about the

15  plausibility and the basis for Polaris's complaint, and

16  I'll just briefly go through that here, Your Honor, but the

17  '449 patent, as was the case with the other patents in this

18  litigation, is related to all-terrain vehicles, off-road

19  vehicles, and it specifically requires, and I've

20  highlighted the language on page 3, a U-shaped sway bar.

21       What a sway bar is is a metal rod or bar that

22  runs between the rear suspensions and gives certain

23  stability to the vehicle.  The '449 patent requires

24  specifically that the middle portion of the sway bar be

25  positioned rearward of the rear end of the frame.

 1            Polaris actually defines what it means by "frame"

 2      in the patent, and I have excerpted it on slide 4 here,

 3      some cutouts from the specification, and what Polaris says

 4      is that that entire section in Figure 9 constitutes the

 5      frame, and we've highlighted the rear end of that frame,

 6      which according to Polaris includes both that red vertical

 7      frame member and that receiver, that hitch receiver on the

 8      back.

 9            So when we're looking at this from our

10      perspective, from Arctic Cat's perspective, we are tying to

11      evaluate, is our sway bar rearward of that frame portion?

12      So we go back, and we look at our vehicle, and what I have

13      put here on page 5 is a CAD drawing of the vehicle Polaris

14      has accused of infringement.

15            As you can see, the sway bar, which is designated

16      by that bottom red arrow, is not rearward of either that

17      vertical frame portion or that hitch receiver in the back.

18      So when we went back and investigated, we had serious

19      concerns about what Polaris's basis was for accusing us of

20      infringement.

21            And those concerns we think are properly vetted

22      through a motion to dismiss in view of the new rules

23      because we frankly don't think they're plausible, and as

24      Your Honor knows, the old Form 18, which has historically

25      governed pleading standards for patent cases, is very

1    generic.

2            It simply requires that you essentially state

3    that you own the patent and accuse the other side of

4    infringement.  It's highly generic as Your Honor noted in

5    the *University of Minnesota* litigation, but the Supreme

6    Court in April of 2015 announced that it was going to

7    abrogate that rule.

8            And one of the main reasons they were going to

9    abrogate it is to bring the pleadings standard for patent

10   infringement in line with the pleading standards for other

11   causes of action that have over the last decade developed

12   under the *Iqbal Twombly* regime, excuse me, and that's a

13   plausibility standard.

14           And what the Supreme Court says is that the rules

15   are going to go into effect on December 1st, and they will

16   govern not only all proceedings that exist after that date,

17   but insofar as just and practicable, all proceedings then

18   pending.

19           So we fall under that later, that later category,

20   and the question is, Is it just and practicable to apply

21   these rules retroactively?  And the District of Minnesota

22   and courts throughout the country have held that

23   retroactivity, retroactive application of the federal rules

24   is heavily favored.

25           Judge Montgomery in the *Dietz* case observed that

1    the burden actually falls on the party resisting

2    retroactive application to show that it is unjust or

3    impractical.  The Fifth Circuit in the second case we have

4    noted there said, To the maximum extent possible the rules

5    should apply retroactively.

6            That case, Your Honor, is particularly

7    interesting, the case from the Fifth Circuit, because at

8    the time the District Court decided the case there, one

9    rule was in place, and the federal circuit observed there

10   was no question that the District Court was correct under

11   that rule.

12           During the pendency of appeal, the rules changed,

13   and the Fifth Circuit said, we're still applying it

14   retroactively because it's just and practicable to do so.

15   So that gives the Court a sense of the extent to which it

16   is favored to apply rules retroactively.  I note on this

17   next slide that they apply, similar to the Fifth Circuit

18   case, other courts have said that they apply to preexisting

19   disputes.

20           So even disputes that arose, were fully briefed

21   before the rule came into effect, courts are saying that

22   we're going to apply the rule retroactively.

23           THE COURT:  So which side's burden is it to prove

24   either just and practicable or unjust and impracticable?

25           MR. HERRIGES:  Our view, Your Honor, and I will

1    scan back here to the *Dietz* case is, the way Judge

2    Montgomery phrased it, is it would be in this case

3    Polaris's burden to say --

4          THE COURT:  That case is not binding on this

5    Court, though, correct?

6          MR. HERRIGES:  That's not, Your Honor.  I'm not,

7    to be fair, I am not aware of any court that is binding on

8    this Court that has outright stated whose burden it is, but

9    that is the way Judge Montgomery characterized it, and I

10   would say that from our perspective we don't think it

11   matters whose burden it is.  We think that we can meet the

12   burden here of showing that it is just and practicable to

13   apply these rules, and we think that's the case for three

14   reasons.

15        To step back a minute in terms of what we're

16   asking for, I do want to be very clear.  We're not asking

17   the Court to dismiss this case with prejudice.  We're not

18   saying Polaris cannot go forward with their claim.  We're

19   saying that we have serious questions about the

20   plausibility, and we think that they need to plead, if they

21   can, a plausible claim for relief.

22        We think it's just and practicable to do so

23   because any delay here is really going to be very minimal

24   in the scope of the parties' dispute.  As I pointed out

25   initially when going through the time line, this patent

1   issued over a year ago now, and Polaris chose not to assert

2   it at that time.  They chose with us to jointly stipulate

3   to a stay of the litigation.  So I think any assertion that

4   delay is unduly prejudiced, in view of what the parties

5   have done so far, I think falls a little flat.

6          It's also a nominal burden here.  Again, we're

7   not saying Polaris needs to lay out their entire case.  In

8   fact, they have in the fifth case, they pleaded under the

9   new standard, and we agreed.  We answered that complaint

10   that it was fully compliant with the new rules.  So we're

11   not saying they need to lay out detailed claim charts.

12          They just need to plead plausibility, and the

13   final point, Your Honor, is that as I have said, we do

14   think that the plausibility here is highly suspect from our

15   perspective, and that's exactly what these amended rules

16   were designed to do.  They were designed to ferret out thin

17   claims at the pleading stage, rather than forcing the

18   parties to undergo extensive discovery and extensive

19   contention requests for months before the theory of the

20   case is laid out.

21          So, Your Honor, with that, we respectfully

22   request that you apply the rule retroactively and grant our

23   motion.

24          THE COURT:  One question.

25          MR. HERRIGES:  Yes.

1              THE COURT:  If the Court applied the older rule,

2    the Form 18 version of the rule, how would that be unjust

3    to Arctic Cat?

4              MR. HERRIGES:  I think it would be unjust to

5    Arctic Cat because, as I have said, we've got a lot of

6    concerns about the plausibility here, and that's why I

7    think this case is unique.  If we don't apply the old

8    standard, we're going to go forward for months here not

9    understanding how they've got a plausible basis for

10   asserting their claim.

11             We're going to have that patent overhanging our

12   head, overhanging our business, and I frankly think it

13   could interfere with the parties' ability to crystallize

14   the dispute and resolve it because we're not going to fully

15   understand what their basis is or understand the plausible

16   basis for it.

17             THE COURT:  All right.  Thank you.

18             MR. HERRIGES:  Thank you, Your Honor.

19             THE COURT:  Mr. Bullard, is it?

20             MR. BULLARD:  That's right, Your Honor.

21             THE COURT:  Go ahead.

22             MR. BULLARD:  Good afternoon, Your Honor.  I'm

23   going to start with a few comments on my opposition's

24   presentation, and then I want to clarify two things and

25   then get to the merits.

1          THE COURT:  All right.

2          MR. BULLARD:  First, notably about half of that

3   presentation didn't go to the legal question here which is,

4   Would it be just and practical?  I think if we had timed

5   that presentation, it took about at least half of it to get

6   to the actual question here, and very little substance was

7   devoted to, What does it mean to be just and practicable?

8          THE COURT:  One clarifying question from my

9   vantage point.  You're not arguing that the current

10  complaint satisfies the new rule, correct?

11         MR. BULLARD:  That's right, Your Honor.  That was

12  not an argument advanced in the brief.  I guess I would add

13  as one gloss on that, the primary point of plausibility

14  they raised in their opening brief was an issue about the

15  claims, and they said sort of, we're not sure what claim is

16  asserted.

17             There is only one independent claim in this

18  patent, and so they know, they certainly have notice of

19  what to go forward with, and they also made a comment about

20  sort of there being some confusion about which claim

21  limitations.  You know, for there to be any infringement,

22  all claim limitations have to be met.  So I don't think

23  there is any plausibility concern there.

24             The second comment, Your Honor, on the opening

25  presentation is, really what I saw a lot in that

1     presentation is comments about the merits, you know.

2     They're putting in annotated figures from the patent.

3     Those are their annotations, their versions.  Those are

4     things that aren't in the pleading.  Those figures, they

5     weren't in our pleading.

6          These are things they brought in, and really, and

7     I'm going to wrap back to this at the end.  I think what is

8     really going on here is, like every patent case, there is a

9     claim construction dispute, but a motion to dismiss is not

10    the vehicle, whether it's disguised as plausibility or

11    otherwise, to resolve the claim construction dispute.

12         That's a question that is for later in the case,

13    and this district has a particular procedure, Form 4, that

14    guides that, guides resolving that dispute, and moving to

15    the second part as far as the clarification, there is no

16    dispute, as Your Honor sort of elicited with your first

17    question, that we did comply with the pleading rules in

18    effect at the time we pled.

19         And Mr. Herriges mentioned the sort of the saga

20    of other litigations, and what I would highlight is, in all

21    of those cases, there was a declaratory judgment brought by

22    Arctic.  There was a couple patent cases brought by

23    Polaris, and there has been further cases brought by

24    Arctic.

25         In all those original cases, the parties moved

1    forward with the case with no problem with this exact form

2    of complaint.  So I think the sort of the insinuation in

3    response to your last question that there would be some

4    problem is belied by the long litigation history between

5    the parties.  None of the parties have had any problem with

6    this style of pleading.

7            And the second clarification is, the point of

8    pleading, whether it's under *Twombly* or whether it is under

9    the form, it is still notice, and there is no sincere

10   dispute that they have notice of what the issue here is,

11   and I think that's really proven by their presentation, as

12   well as their brief.  In their reply brief on page six,

13   they put in that CAD drawing that you saw earlier on the

14   screen.

15           Stepping back, the fact that they were able to

16   pull a specific CAD drawing and annotate it shows that they

17   know exactly what the issue is.  They are zeroed in.  They

18   know the claim.  They know the issue, and so we think we

19   have certainly achieved the notice purpose of the rules.

20           Now, moving to the substance part, the question

21   is really, What does it mean to be just and practicable?  I

22   heard Mr. Herriges talk about the burden, and Your Honor

23   asked some questions, and looking at that *Dietz* case, I

24   don't think the *Dietz* case says one way or another what,

25   who has the burden, and frankly I don't think it makes

1    sense to, in this situation, for either party to have the

2    burden.

3            I think it's just a common sense evaluation of

4    the circumstances, and Mr. Herriges also had a quote up

5    there from a different circuit suggesting that there was

6    this rule that you just, as a sort of automatic exercise,

7    apply the rule to the maximum extent possible.  That

8    comment was made in the context of a particular amendment

9    to the rule.  I think it had to do with Rule 24.  That was

10   an older case.

11           There certainly has been no suggestion in this

12   circuit or I think in that circuit that there is a default

13   that you apply the rule automatically.  It's always a

14   question of, What is just and practicable?  Starting with,

15   and I would like to just walk through each of those words.

16           As far as practicality goes, Polaris's position

17   is that it's not practical to have a remedy that requires

18   you to basically reset the case and undo what you already

19   did, and I think the *Dietz* case really brings this point

20   out.  Mr. Herriges had a quote up there from Judge

21   Montgomery, and what he ellipsed out, though, is really the

22   heart of why she retroactively applied the rule.

23           There the question was, it was Rule 45, Should

24   the Court retroactively apply a change to the subpoena

25   rule, and the Court ultimately yes, and the reason, and

1    this is what she said:  She said, Additionally, all conduct

2    relevant to the contested subpoena occurred after the

3    amendment took place, and we have the opposite situation

4    here.  The conduct here was, we pled and the rule changed.

5         It's a very different situation when you're

6    dealing with conduct that took place after the rule, and

7    Mr. Herriges also had a slide where he talked about some

8    courts that have applied the changes to the discovery rule.

9    Again, that's completely consistent with Judge Montgomery's

10   opinion where the focus is on when is the conduct taking

11   place.

12        When we're dealing with discovery, that's

13   continuing conduct that you can help shape the parties'

14   behavior in a proactive way going forward.  Pleading is a

15   one-time event that they would want to sort of have us step

16   back, and so our position is, it's not practical, and we

17   think Judge Montgomery got it right when she focused on

18   when the conduct occurred relative to the rule.

19        Now, on the question of whether it is just, what

20   the cases seem to really be getting at is something that is

21   fundamentally different than this case.  What they're

22   getting at is, Would applying the rule avoid prejudice?  So

23   they're concerned about situations where the rule is fixed,

24   and a party who had made a mistake is left hanging out to

25   dry, and they feel sorry for that party.

1        A good example is the *Federal Bureau* of Prisons

2    case, which I think Mr. Herriges cited.  I believe that

3    might have even been that First Circuit case, and there the

4    situation was that the plaintiff's case had been dismissed

5    for failure to name the proper party, and subsequent to

6    that, I believe it was Rule 15 was amended, and on appeal,

7    the Court was sympathetic for this party whose case had

8    been dismissed for this technicality.

9        Now here, we're doing with the opposite.  They

10   actually want to affirmatively dismiss our case and have us

11   re-plead, and I think if we're talking about prejudice, I

12   just really don't see any sincere prejudice to Arctic Cat.

13   So going, looking back at this question of what is

14   practical and what is just, we don't think it's practical,

15   and we don't think it's just, and we would note that there

16   is a conspicuous absence here.

17       They don't have any case where any court has done

18   what they're asking.  No court as far as we're aware, and

19   we did a check yesterday before we came over, no court has

20   retroactively applied the rules to dismiss a case that

21   there is no dispute properly followed the rules at the time

22   of its pleading in a patent case here.

23       So not only do they not have any cases, our

24   position is their cases refute them.  I went through the

25   *Dietz* case where Judge Montgomery focused on when the

1      conduct occurred.  I went through the *Federal Bureau of*

2      *Prisons* case, which was trying to avoid prejudice and avoid

3      a dismissal.  The logic doesn't support them.

4              Your Honor, two final comments.  First on the

5      practicality subject, there is no substantive benefit to

6      granting their motion, none.  I mentioned earlier, as Your

7      Honor is aware, that this district has a procedure that

8      gets them a detailed claim chart and gets us a detailed

9      prior art statement.  That's the way it's supposed to work.

10             If they hadn't brought this motion, we would be

11     nearing that deadline.  They would be getting that high

12     level of detail now, but because they brought this motion,

13     nothing has happened in this case.  We're four months in.

14     We haven't had a scheduling conference.  We don't have a

15     scheduling order.

16             There are other cases between the parties that

17     were filed subsequent to this one.  We have a scheduling

18     order.  We have a deadline for claim charts.  We're moving

19     towards the merits.  If they're concerned about the merits,

20     we should be moving towards the merits, not moving

21     backwards, and on the practicality point, really amending

22     here is counterproductive.

23             Mr. Herriges mentioned that there was a fifth

24     case between the parties where we had a different style of

25     pleading, and what happened in that case is, when they

1    answered, there was no narrowing of the issues whatsoever.

2    What they did is, they denied our allegations because they

3    said, quote, "They state a legal conclusion to which no

4    response is required."

5             So if we were ordered to amend, that's what we

6    would get back from them, no clarification whatsoever.

7    This is not a step forward.  This is a formalistic going

8    through the motions, and then finally, Your Honor, you

9    know, there has been some insinuations about the

10   plausibility here, and I want to emphasize that in their

11   opening brief, there was no dispute that we plausibly

12   stated a claim under the rules at the time of the pleading.

13            This is an argument they brought up for the first

14   time in their reply that we never had a chance to respond

15   to, and when we look at what they have put in, it's very

16   clear that we do have a plausible claim, and again, as I

17   mentioned in the beginning, this is simply a claim

18   construction, a vanilla claim construction dispute.

19            So here is their figure they put in, and it is a

20   side view of the product, which frankly makes it a little

21   bit difficult to assess the limitation, as Mr. Herriges

22   alluded to, has to do with the rear end of the vehicle.  So

23   it's a little bit easier to understand when you look at the

24   rear of the vehicle as opposed to the side.

25            So the question is whether the middle portion of

1    the sway bar, so that's kind of the green line that is

2    going into the page which they have drawn that sway bar

3    arrow to, whether that is rearward of a rear end of the

4    frame, and they annotate these two points.

5         Now, there is nothing in the patent, nothing in

6    the specification, that says you should assess this claim

7    limitation using those two points.  They have simply picked

8    those two points because that's the construction they want.

9    That's not what the patent says.

10        If we go to the next slide, Your Honor, looking

11   at their figure, I have drawn a yellow arrow to another

12   point on the frame.  That's the point on the frame where

13   the middle portion is actually located.  So you can see if

14   you look at the red arrow going to the sort of the bright

15   green bar and then the yellow arrow going to the light

16   green bar, at that point the sway bar is undeniably

17   rearward of the frame.

18        So there is certainly plausible interpretations

19   where they infringe, and again, Your Honor, you know, I

20   titled this the Merits.  Our position is, this is all a

21   discussion of the merits, which is just inappropriate at a

22   motion to dismiss, and, you know, this figure, this wasn't

23   even in the pleading.

24        Certainly, if we're just looking at figures,

25   though, what I have put up for Your Honor's benefit is a

1    rear view, which I think makes this even clearer.  On the

2    left, I have the preferred embodiment from the patent, this

3    showing in red what it looks like to have a sway bar with

4    the middle portion rearward of a rear end.

5            Here is their product.  It's very similar, very

6    similar, and, you know, this is not a case where they

7    called us up on the phone and said, you know, we have an

8    issue.  We're a little confused about your interpretation,

9    or we don't think you have a Rule 11 basis.  None of that

10   happened.

11           They simply brought this motion, and the only

12   basis they have is for this retroactive application of the

13   rule, and Your Honor, to sum up, we just don't think it's

14   just and practical, and if there was any doubt, we would

15   cite to Rule 1, which is supposed to be the guiding light

16   for all these procedural rules:  Just, speedy and

17   inexpensive.

18           We don't think this motion achieved any of those

19   goals.  We have wasted money.  We have wasted time, and we

20   are not moving the ball towards the merits.  Thank you,

21   Your Honor.

22           THE COURT:  Thank you, Mr. Bullard.

23           Did you have anything else, Mr. Herriges?

24           MR. HERRIGES:  Just a minute, Your Honor?

25           THE COURT:  Sure.

1      MR. HERRIGES:  I do want to point out, Your

2  Honor, we're not raising these disputes about claim

3  construction to try to resolve this case on the merits.  We

4  raised this issue because we don't think it's plausible,

5  and these pleadings and this explanation that we have heard

6  today isn't in the complaint.  So it's not plausibly

7  showing to us how we infringe in their view.

8      I'll also note, Your Honor, that quite frankly we

9  expected that they would amend under Rule 15, as they were

10  entitled to do, the day that we filed our complaint.

11  That's what we thought was going to be the result of this.

12  So frankly we're a little bit surprised we're here.  Again,

13  these concerns about delay we think are largely

14  manufactured.

15      Unless Your Honor has further questions, that's

16  all I have.

17      THE COURT:  I don't.  I have one unrelated

18  question.  The dispute that is in the separate case before

19  Judge Montgomery right now?

20      MR. HERRIGES:  Yes, sir.

21      THE COURT:  Are all of you involved in that one

22  as well?

23      MR. HERRIGES:  We are, Your Honor.

24      MR. BULLARD:  We are.

25      THE COURT:  My question is, It's a different

1    patent in that case, correct?

2              MR. HERRIGES:  Yes, Your Honor.

3              THE COURT:  What's the subject matter of that

4    patent?

5              MR. BULLARD:  Your Honor, it's all-terrain

6    vehicles again, but I think it has to do with a novel air

7    filtration system.

8              MR. BREMER:  I would call it CVT air intake would

9    probably be the parties' --

10             THE COURT:  All right.  That's helpful.

11             MR. BREMER:  Thank you, Your Honor.

12             MR. HERRIGES:  Thank you, Your Honor.

13             THE COURT:  Thank you.  The Court will take the

14   motion under advisement and will issue an order shortly.

15   Thanks.

16             The Court is in recess.

17             THE CLERK:  All rise.

18                   *         *         *

19             I, Kristine Mousseau, certify that the foregoing

20   is a correct transcript from the record of proceedings in

21   the above-entitled matter.

22

23

24   Certified by:  s/  Kristine Mousseau, CRR-RPR
                       Kristine Mousseau, CRR-RPR
25