# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| POLARIS INDUSTRIES INC., | Civil Nos. 15-4129, 15-4475 (JRT/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER AFFIRMING THE MAGISTRATE JUDGE'S DENIAL OF DEFENDANTS' MOTION TO COMPEL** |
| ARCTIC CAT INC. and ARCTIC CAT SALES INC., | |
| Defendants. | |

William F. Bullard, Samuel T. Lockner, and Nathan Louwagie, **CARLSON CASPERS VANDENBURGH LINDQUIST & SCHUMAN PA**, 225 South Sixth Street, Suite 4200, Minneapolis, MN 55402, for plaintiff.

Joseph A. Herriges, Jason M. Zucchi, Conrad A. Gosen, and John C. Adkisson, **FISH & RICHARDSON P.C.**, 60 South Sixth Street, Suite 3200, Minneapolis, MN 55402, for defendants.

In these related patent-infringement actions, Defendants Arctic Cat Inc. and Arctic Cat Sales Inc. (collectively "Arctic Cat") appeal an order of the Magistrate Judge denying Arctic Cat's motion to compel Plaintiff Polaris Industries Inc. ("Polaris") to produce documents related to Polaris's financial relationship with non-party Polaris Sales Inc. ("PSI"), a wholly owned subsidiary of Polaris. Because the Magistrate Judge did not clearly err in denying Arctic Cat's motion, the Court will affirm the order of the Magistrate Judge.

## BACKGROUND

In 2015, Polaris brought these actions against Arctic Cat, alleging patent infringement. (Compl., Nov. 16, 2015, Docket No. 1.)[1] The cases have proceeded through discovery; *Daubert* and dispositive motions are due to be filed in the coming months. (*See* Order, Apr. 13, 2018, Docket No. 136.)

The present appeal concerns discovery related to lost-profits damages. A patentee who proves infringement is entitled to damages "adequate to compensate for the infringement." 35 U.S.C. § 284. "To recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc). Generally, "a patentee may not claim, as its own damages, the lost profits of a related company." *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015).[2] A patentee may, however, recover the lost profits of a related company if the patentee can show that the profits of the related company flow inexorably to the patentee. *Schwendimann v. Arkwright Advanced Coating, Inc.*, 220 F. Supp. 3d 953, 974 (D. Minn. 2016); *Kowalski v. Mommy Gina Tuna Res.*, 574 F. Supp. 2d 1160, 1163 (D. Haw. 2008).

---

[1] All record citations are to Case No. 15-4129.

[2] The Supreme Court vacated the 2015 opinion in *Warsaw* on other grounds, *Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 136 S. Ct. 893 (2016), and the Federal Circuit on remand reinstated the portion of *Warsaw* related to lost profits, *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1351 (Fed. Cir. 2016).

At trial, Polaris intends to seek lost profits. (Sealed Tr. of Mots. Hr'g ("Tr.") at 57:1-8, May 15, 2018, Docket No. 170.) Polaris – the patent owner in these actions –sells products through PSI that compete with the accused products sold by Arctic Cat. (*See* Sealed Ex. L at ¶ 20, Apr. 26, 2018, Docket No. 147.) Polaris seeks to recover the lost profits of PSI, arguing that profits from PSI flow inexorably to Polaris. (Tr. at 57:1-8; *see* Sealed Ex. L at ¶ 20.)

In March 2016, Arctic Cat served Polaris with a Rule 34 request, asking for "[a]ll documents and things concerning any lost profits Polaris contends that it is owed by Arctic Cat for alleged infringement of the patent-in-suit." (Decl. of Conrad Gosen ("Gosen Decl.") ¶ 4, Ex. C at 123, Apr. 26, 2018, Docket No. 143.) In that request, Arctic Cat broadly defined "Polaris" to mean

> Polaris Industries Inc., including all predecessors, successors, subsidiaries, divisions, parents, and affiliates thereof, past or present, joint ventures, and other legal entities that are wholly or partially owned or controlled by Polaris, either directly or indirectly, and all past or present directors, principals, officers, owners, employees, agents, representatives, consultants, attorneys, and others acting for or on behalf of these same entities.

(*Id.* ¶ 4, Ex. C at 115-16.) Polaris objected to Arctic Cat's definition of "Polaris," stating that Arctic Cat's broad definition did not comply with Rule 34's "reasonable particularity" requirement, that Polaris did not understand "the scope of what Arctic [Cat] [wa]s seeking," and thus that Polaris would "interpret 'Polaris' to mean the plaintiff: Polaris Industries Inc." (*Id.* ¶ 6, Ex. E at 141-42; *see also* Fed. R. Civ. P. 34(b)(1)(A).)

During discovery, in 2015, Polaris produced a "Marketing and Distribution Agreement" between Polaris and PSI that purportedly shows how Polaris sells its products through PSI.  (Decl. of Samuel T. Lockner ("Lockner Decl.") ¶ 7, May 3, 2018, Docket No. 155; Sealed Ex. 6, May 3, 2018, Docket No. 161.)[3]  Polaris claims that it cited this Marketing and Distribution Agreement in response to two of Arctic Cat's interrogatories related to damages.  (Pl.'s Sealed Mem. in Opp'n at 17 n.11, May 3, 2018, Docket No. 154.)  Polaris also produced "hundreds of documents related to PSI."  (Tr. at 73:22-24.)

In April 2018, over two years after it served its document request, Arctic Cat moved to compel Polaris to produce documents related to the financial relationship between Polaris and PSI.  (*See* Defs.' Mot. to Compel, Apr. 26, 2018, Docket No. 138.)  Arctic Cat maintains that it was unaware until recently that Polaris would be seeking lost profits via an inexorable-flow theory.  (Defs.' Sealed Mem. in Supp. at 1-2, Apr. 26, 2018, Docket No. 141.)

The Magistrate Judge denied Arctic Cat's motion to compel.  (Tr. at 75:14-25.)[4]  The Magistrate Judge concluded, pursuant to Rule 26(b)(2)(C)(ii), that "Arctic Cat had ample opportunity to obtain information regarding the relationship between Polaris and PSI during discovery."  (*Id.* at 75:14-16.)  In support of his conclusion, the Magistrate

---

[3] The Marketing and Distribution Agreement was produced in May 2015, almost a year before Arctic Cat served its March 2016 request for production.  (*See* Lockner Decl. ¶ 9, Ex. 8 at 2.)

[4] Arctic Cat also moved to strike Polaris's inexorable-flow theory of lost-profits damages under Rule 37, which the Magistrate Judge also denied, but Arctic Cat appeals only the portion of the Magistrate Judge's order denying is motion to compel.  (Defs.' Appeal at 5 n.2, May 24, 2018, Docket No. 174.)

Judge found (1) that Polaris and Arctic Cat are "seasoned legal adversaries," (2) that the Marketing and Distribution Agreement "show[ed] that Polaris sold its product[s] via PSI," (3) that Arctic Cat was aware – based on Polaris's objection to Arctic Cat's definition of "Polaris" – that Polaris did not think PSI was included within the scope of Arctic Cat's document request, (4) that "Polaris's lost-profits damages theory was not undisclosed," and (5) that Arctic Cat was not prejudiced by Polaris's alleged failure to produce the documents Arctic Cat now requests. (*Id.* at 72:16-75:13.)

This appeal followed.

## DISCUSSION

### I. STANDARD OF REVIEW

"The standard of review applicable to an appeal of a Magistrate Judge's order on nondispositive pretrial matters is extremely deferential." *Skukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 235 (D. Minn. 2013) (citing *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007)). Reversal is only appropriate if the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a)(3). For an order to be clearly erroneous, the district court must be "left with the definite and firm conviction that a mistake has been committed." *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). "[T]he district court has inherent power to review the final decision of its magistrate[] [judges]." *Bruno v. Hamilton*, 521 F.2d 114, 116 (8th Cir. 1975).

## II.   ARCTIC CAT'S APPEAL

Under Federal Rule of Civil Procedure 26(b)(2)(C)(ii), the Court "must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." The Magistrate Judge concluded that "Arctic Cat had ample opportunity to obtain information regarding the relationship between Polaris and PSI during discovery." (Tr. at 75:14-16.) That conclusion is not clearly erroneous, especially in light of the parties' litigation history against one another and the fact that Polaris produced documents showing a relationship between Polaris and PSI.

Arctic Cat insists that Polaris should have disclosed, and did not disclose, its inexorable-flow theory of lost-profits damages.[5] Reasonable minds could disagree as to whether Polaris was required to disclose its inexorable-flow theory, and whether Polaris failed to disclose this theory. If Polaris was required to disclose its inexorable-flow theory, a finding that Polaris failed to disclose its inexorable-flow theory would weigh slightly in favor of concluding that Arctic Cat did not have an ample opportunity to obtain the documents it now requests. On the one hand, Polaris disclosed that it was seeking lost profits, Arctic Cat never pressed Polaris on the details (until now), and Polaris produced documents showing a relationship between Polaris and PSI. On the other hand, Polaris's

---

[5] This argument appears to be directed at Arctic Cat's motion to strike or to Polaris's response to Arctic Cat's interrogatories, neither of which are the subject of Arctic Cat's appeal of the Magistrate Judge's order denying Arctic Cat's motion to compel production of documents. Whether Polaris was required to disclose its "theory" of an issue is a separate question from whether Polaris was required to produce the documents Arctic Cat seeks.

interrogatory response mentions "Polaris and Arctic Cat's sales" with no mention of PSI. (Gosen Decl. ¶ 8; Sealed Ex. G at 19, Apr. 26, 2018, Docket No. 145.)  Because reasonable minds could disagree, the Court is not "left with the definite and firm conviction that a mistake has been committed."  *Lisdahl*, 633 F.3d at 717 (quoting *Anderson*, 470 U.S. at 573).  Thus, the Magistrate Judge did not clearly err in finding that Polaris's inexorable-flow theory was not undisclosed, especially in light of the parties' extensive familiarity with each other and the disclosure of documents showing Polaris's relationship with PSI.[6]  The Court will accordingly affirm the order of the Magistrate Judge.

### III.  INEXORABLE FLOW

The Court finds it prudent at this stage to make clear its expectations going forward, based on the Court's recent experience with the inexorable-flow theory of lost-profits damages in patent cases.

In *Schwendimann*, 220 F. Supp. 3d 953, the Court held that an individual patentee could not rely merely on the tax status of her solely owned S corporations to show that profits of those corporations flowed inexorably to her.  *Id.* at 974.  The Court required the patentee to produce "contractual, structural, or historical" evidence of inexorable flow because "[m]ere ownership and control [was] insufficient to prove that profits flow[ ] inexorably from a subsidiary to a parent."  *Id.* (quoting *Kowalski*, 574 F. Supp. 2d at 1163).

---

[6] Arctic Cat also insists – as a reason to reverse the Magistrate Judge – that it seeks only a small set of relevant documents and a limited corporate deposition.  But Rule 26(b)(2)(C)(ii)'s bar does not depend on the breadth of discovery sought.  It depends on whether the requesting party had an ample opportunity to obtain the information.

The Court allowed the plaintiff's damages expert to testify about the tax status of the companies, but warned that the plaintiff risked dismissal of the lost-profits damages theory without other contractual, structural, or historical evidence. *Schwendimann v. Arkwright Advanced Coating, Inc.*, No. 11-820, 2017 WL 4277142, at *4 (D. Minn. Sept. 25, 2017). Therefore, Polaris cannot rely merely on its ownership and control of PSI (or on PSI's tax status) to prove that PSI's profits flow inexorably to Polaris. *Kowalski*, 574 F. Supp. 2d at 1163. Additionally, any expert opinion that PSI's profits flow inexorably to Polaris must be based on more than Polaris's ownership and control of PSI. *See* Fed. R. Evid. 702(b).

Polaris has agreed that the only documents it will rely on at trial are documents produced during discovery. (Tr. at 57:9-58:2.) Polaris has also agreed that the only documents on which its damages expert's opinions will be based are documents produced during discovery. (*Id.*) Thus, the Court expects Polaris to present at trial sufficient evidence from which the jury could find that PSI's profits flow inexorably to Polaris, according to the standard articulated above and without reliance on any unproduced documents. The Court also expects Polaris's damages expert's opinions – including any opinion that PSI's profits flow inexorably to Polaris – to be based on sufficient facts or data, according to the standard articulated above and without reliance on any unproduced documents.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Defendants' Appeals [Docket No. 174 (15-4129); Docket No. 274 (15-4475)] are **DENIED**, and the Magistrate Judge's Orders [Docket No. 169 (15-

- 9 -

4129); Docket No. 267 (15-4475)] Denying Defendants' Motions to Compel [Docket No. 138 (15-4129); Docket No. 236 (15-4475)] are **AFFIRMED**.

DATED:  July 3, 2018             _____s/John R. Tunheim_____
at Minneapolis, Minnesota.             JOHN R. TUNHEIM
                                               Chief Judge
                                   United States District Court